**Walter ASHE, Appellant,**

v.

**Luther D. ROBINSON.**

**No. 71–1138.**

United States Court of Appeals,
District of Columbia Circuit.

Sept. 14, 1971.

McGowan, Circuit Judge, did not participate.

---

1. Excelsior Underwear Corp., 156 N.L.R.B. 1236, 1239 (1966).

Mr. Robert J. Golten, Washington, D. C., was on the pleadings for appellant.

Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry and Daniel J. Bernstein, Asst. U. S. Attys., were on the pleadings for appellee.

Before BAZELON, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges.

PER CURIAM:

This appeal centers on the District Court's dismissal, without an evidentiary hearing, of the petition of a patient seeking relief by way of habeas corpus from maximum confinement at Saint Elizabeths Hospital allegedly without treatment. The patient, our appellant, averred in support of the petition the denial of an expeditious *Bolton* hearing[1] and of a program of treatment pending the hearing. Our consideration begins with a summary of the events which gave birth to the controversy.

After a four-day trial in the District Court, appellant was found not guilty of carnal knowledge by reason of insanity.[2] Thereupon, he was committed to Saint Elizabeths for a 30-day period to enable observation and mental examinations. The commitment was designed to afford a diagnosis of appellant's current mental condition and a report thereon as forerunners to the judicial hearing and determination our decision in Bolton v. Harris mandates for cases of this kind.[3]

Nearly two months later, appellant filed the habeas corpus petition, designating as the respondent the superintendent of the hospital, the appellee here. In the petition appellant alleged that he was detained in John Howard Pavilion, a maximum security facility at the hospital, and contended that the detention was illegal because more than 30 days had expired without provision of a *Bolton* hearing and without provision of treatment. He also asserted rights to a prompt hearing and determination on present mental condition, and in the interim to an appropriate but least restrictive course of treatment.

Upon the filing of the petition, the District Court issued an order to show

1. See text *infra* at note 3.

2. This disposition followed a bifurcated trial, and the trial was appellant's third. His first resulted in a mistrial; his second in a conviction of carnal knowledge which was vacated on appeal. United States v. Ashe, 138 U.S.App.D.C. 356, 427 F.2d 626 (1970). Thereafter, the Government sought to have appellant civilly committed, but the Commission on Mental Health found appellant not likely to injure himself or others if at liberty and dismissed the petition. Proceedings in the criminal case then resumed.

3. See Bolton v. Harris, 130 U.S.App.D.C. 1, 7–11, 395 F.2d 642, 648–652 (1968), construing D.C.Code § 24–301(d) (1967).

cause, to which appellee made a return. Appellee alleged that about a month previously a report on appellant's mental condition had been transmitted to the court,[4] and that a *Bolton* hearing was scheduled to occur twelve days thereafter. The District Court then entered an order referring to the forthcoming hearing and dismissing the petition, and this appeal followed. Appellant has moved for summary reversal and appellee for summary affirmance.

■ A party seeking summary disposition of an appeal—by either affirmance or reversal—has the burden of "demonstrating both that his remedy is proper and that the merits of his claim so clearly warrant relief as to justify expedited action."[5] After carefully exploring the issues and the opposing contentions, we conclude that neither party has met that standard.

We are advised by the memoranda presented on the cross-motions that at the *Bolton* hearing, conducted after this appeal was taken, a jury found appellant to be mentally ill and dangerous, and that thereupon the District Court recommitted appellant to Saint Elizabeths. Appellee argues that the earlier claim that appellant was confined under an expired 30-day commitment order was rendered moot by the determination and order emanating from that hearing. So much appellant appears to concede, and since in any event the claim is no longer pressed, we have no occasion to consider it.[6]

With that claim, however, appellant had coupled another—that he was entitled to but was denied appropriate prehearing treatment—and we are by no means sure that the controversy in the latter regard is dead. Arguably, the operative events forming the basis for assertion of a right to prehearing treatment could recur, and the right could be "defeated[] by short term" action "capable of repetition, yet evading review"[7] in the short time available therefor; if so, the mootness doctrine arguably would not apply.[8] Be that as it may, we do not pass on the question, because even if it is not moot it could not be soundly resolved on the sparse record before us.

■ It is clear that one who by reason of insanity is acquitted of crime and who upon a *Bolton* hearing is committed to a mental hospital is entitled not only to treatment[9] but to treatment in "the least restrictive alternative consistent with the legitimate purposes of a commitment."[10] But the claim which appellant presented by habeas corpus petition, and which appellee would now have us reject out of hand, was to a program affording the least restrictive treatment prior to his *Bolton* hearing. Were we to undertake to pass on that claim, we would need to know a great deal more than we can glean from the record with which we are provided.

■ The objective of a prehearing commitment, as we have indicated,[11] is

---

4. The report expressed the hospital's "opinion that the patient is suffering from Passive-Aggressive Personality, Alcoholic Deterioration and Pedophilia, and [that] at the present time he is likely to injure himself or others if discharged into the community."

5. United States v. Allen, 133 U.S.App.D.C. 84, 85, 408 F.2d 1287, 1288 (1969).

6. *E. g.,* Abrams v. American Sec. & Trust Co., 72 App.D.C. 79, 80, 111 F.2d 520,. 521, 129 A.L.R. 368 (1940).

7. Southern Pac. Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). *Bolton* hearings must

now be held within 50 days after the commitment. D.C.Code § 24–301(d) (2) (Supp. IV 1971).

8. *E. g.,* Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) ; Southern Pac. Terminal Co. v. ICC, *supra* note 7, 219 U.S. at 515, 31 S.Ct. 279. But see Golden v. Zwickler, 394 U.S. 103, 108–110, 89 S.Ct. 956, 22 L. Ed.2d 113 (1969).

9. *E. g.,* Rouse v. Cameron, 125 U.S.App. D.C. 366, 369, 371, 373 F.2d 451, 454, 456 (1966).

10. Covington v. Harris, 136 U.S.App.D.C. 35, 41, 419 F.2d 617, 623 (1966).

11. See text *supra* at note 3.

observation and examination to ascertain current mental condition, and the commitment is temporary and of limited duration. The *Bolton* procedure contemplates a judicial hearing and determination on present mental condition promptly after completion of the examination,[12] and if need be another commitment with a view to a course of treatment that might lead to the patient's eventual recovery and release. We do not know whether it is medically feasible to formulate and implement treatment programs prior to completion of prehearing diagnoses, or during the relatively brief period within which prehearing examinations are to be conducted.[13] Nor do we know whether it is possible or practicable to inaugurate treatment programs —particularly the least restrictive type of programs—without interference with the hospital's responsibility to investigate and diagnose present mental condition. Nor do we know whether, in the event that prehearing treatment can be afforded in some but not all cases, the instant case happens to be one in which it could have been done. In posing these problems prominently among those confronting any endeavor to resolve a question of prehearing treatment, we intend no intimation whatever on the merits. We say only that the record before us precludes decision of the question on an adequately informed basis.

■ In his habeas corpus petition, appellant did not address squarely the medical feasibility of prehearing treatment, but instead emphasized his entitlement to it simply as a matter of legal right.[14] Appellee, in his return to the order to show cause, did not address the matter of prehearing treatment at all. The District Court dismissed the petition without a hearing at which evidence affording insight into the matter might have been adduced. The net result is that we are left in the dark on vital aspects of the case.

We do not pause to assess the blame for the state in which the record was left. In any event, before we could deal with the problem of prehearing treatment, it would have to run the gamut of repleading and, in all probability, of an evidentiary hearing in the District Court. In our view, the resources of the parties and the courts alike could be better utilized by taking a different tack in this case.[15] For appellant, in memoran-

---

12. *See* Bolton v. Harris, *supra* note 3, 130 U.S.App.D.C. at 10, 395 F.2d at 651.

13. Submitted with the habeas corpus petition was the affidavit of a physician on the Saint Elizabeths staff expressing the opinion that appellant "should be in a hospitally-based program, with work privileges in the community, receiving some treatment here, and gradually easing back entirely to a community-based rehabilitative program over the next six months," and that "[i]n such a modulated program (conditioned on his abstaining from alcohol and contact with his family)" appellant "presents no danger to himself or others." Since the affidavit was made more than two weeks *after* the hospital's certification, see note 4, *supra*, though prior to the *Bolton* hearing, it is not clear that the recommendation was referable to the prehearing period. The opinion stated in the affidavit, however, was similar to one expressed by another staff physician five months earlier at appellant's hearing before the Mental Health Commission. On the other hand, appellant's petition alleged that a request for such a treatment program was made to the physician serving as clinical director of John Howard Pavilion and was denied on the ground that nothing could be done to institute that program until after the hearing.

14. The sole deviation from that course is delineated in note 13, *supra*.

15. The issue of the right to pre-*Bolton* treatment seems particularly appropriate for consideration and resolution by the hospital prior to its consideration by any court. As suggested, the issue cannot be properly considered without information concerning the acceptable standards of psychiatric practice and the possibly conflicting goals of diagnosis and treatment in the least restrictive manner. These matters could more properly be explored and determined in the first instance in some internal administrative proceeding along the lines urged by this court in several cases beginning with Rouse v. Cameron, *supra* note 9, 125 U.S.App.D.C. at 371 n. 22, 373 F.2d at 456 n. 22.

da filed on appeal, asserts that notwithstanding his post-hearing commitment to Saint Elizabeths, he is still without benefit of treatment.[16] Whatever may have been the proper course, in terms of treatment, prior to that commitment, it is clear that appellant became entitled to treatment thereafter.[17] We understand, too, that notwithstanding medical recommendations that appellant be placed in a hospital-based program with work privileges in the community,[18] appellant has remained in confinement at Saint Elizabeths.[19] We think the interests of justice would best be served by vacating the District Court's order dismissing the petition for habeas corpus, and remanding the case to the District Court to afford appellant the opportunity of litigating the question whether he is presently receiving treatment in "the least restrictive alternative consistent with the legitimate purposes of a commitment."[20]

The cross-motions for summary disposition are denied. The District Court's order dismissing the petition for habeas corpus is vacated, and the case is remanded for further proceedings consistent with this opinion. Appellant may tender an issue as to his current treatment program by supplemental petition,[21] with an opportunity to appellee to respond; and the District Court will then proceed, with or without a hearing as conditions may warrant, to a disposition of that issue.

So ordered.

Circuit Judge McGOWAN did not participate in the consideration or decision of this case.

---

16. Appellant also advises that he has been transferred from maximum security to a minimum security ward in John Howard Pavilion, but has not been placed in a work release program or granted extra-hospital privileges.

17. See text *supra* at note 9.

18. See note 13, *supra*.

19. See note 16, *supra*, and text *supra* at note 10.

20. See text *supra* at note 10.

21. A petition for habeas corpus "may be * * * supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242 ¶ 3 (1964). As to supplemental pleadings, see Fed.R. Civ.P. 15(d).