UNITED STATES, Appellant,

v.

Michael K. SHORTER, Appellee.

No. 9076.

District of Columbia Court of Appeals.

Argued July 17, 1975.

Decided Aug. 26, 1975.

As Amended Sept. 29, 1975.
Rehearing en Banc Denied Oct. 29, 1975.

Richard A. Graham, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Harry R. Benner, Asst. U. S. Attys., were on the brief, for appellant.

Frederick J. Sullivan, Washington, D. C., appointed by the court, for appellee.

Before REILLY, Chief Judge, and KELLY and KERN, Associate Judges.

KELLY, Associate Judge:

The government appeals from an order of the trial court refusing to commit appellee to a mental hospital after his acquittal by reason of a mental defect and releasing him from the jurisdiction of the court. The government claims this action was directly contrary to D.C.Code 1973, § 24–301(d)(1) [1] because that statute makes commitment of the insanity-acquitted [2]

---

1. D.C.Code 1973, § 24–301(d)(1):

   If any person tried upon an indictment or information for an offense raises the defense of insanity and is acquitted solely on the ground that he was insane at the time of its commission, he shall be committed to a hospital for the mentally ill until such time as he is eligible for release pursuant to this subsection or subsection (e).

2. An acquittal by reason of insanity, which we conclude *infra* includes mental defects, is a determination of guilt beyond a reasonable doubt of the acts charged. *United States v. Brown,* 155 U.S.App.D.C. 402, 406, 478 F.2d 606, 610 (1973); *Cameron v. Mullen,* 128 U.S.App.D.C. 235, 240 n. 12, 387 F.2d 193, 198 n. 12 (1967).

mandatory, and thus in excess of the trial court's authority.

Appellee, twenty years old at the time, was convicted in the first phase of a bifurcated trial of taking indecent liberties with a minor child (D.C.Code 1973, § 22–3501 (a)) and enticing a minor child (D.C.Code 1973, § 22–3501(b)). During the second portion of the trial on the issue of appellee's mental state at the time of the offense it was established by expert testimony that appellee was moderately mentally retarded, with an I.Q. given variously as 48 to 67, and that he was unable to control sexual impulses, although he could perhaps be taught to do so with the proper counseling. At the end of this phase of the trial, the court found appellee not guilty because of mental retardation and released him in the third-party custody of a representative of the Occupational Training Center, an institution he was then attending. Thereafter the government moved to have appellee committed to a mental hospital in accordance with D.C.Code 1973, § 24–301(d)(1). A further hearing was held to take testimony concerning the proper disposition of appellee. In its ensuing order the court found that the statute did not refer to those with mental defects, that a mental defect was not the same thing as a mental illness, and thus that the statute was not applicable to appellee. The court also decided that it lacked power over appellee's further treatment and training as none was given by § 24–301 or by any other statute and accordingly released him from the jurisdiction of the court. *See Cameron v. Mullen*, 128 U.S.App.D.C. 235, 240, 387 F.2d 193, 198 (1967).

**I**

As a preliminary matter, appellee contends that this court is without jurisdiction of this appeal because the trial court could not legally commit appellee under § 24–301(d)(1) or any other statute. But whether the trial court had jurisdiction over appellee after trial does not determine our jurisdiction and we agree with the government's view that it may appeal an order of the trial court which was entered without authority. *District of Columbia v. Bosley*, D.C.Mun.App., 173 A.2d 218, 220 (1961). The government may also appeal an order which terminates the prosecution in favor of the defendant and is not an acquittal on the merits. D.C.Code 1973, § 23–104(c).

**II**

There are many types of mental disorders which are considered sufficient to negate the element of criminal responsibility and are included under the legal rubric of "insanity defense". Mental retardation is one such disorder, so that for purposes of determining responsibility retardation is a species of insanity. For other purposes, notably treatment, retardation is not considered either legally or otherwise to be a type of mental illness [3] and the treatment of the mentally ill or insane and the mentally retarded is quite different.

That mental retardation is included in the insanity defense has been established by case law. The insanity defense is raised where as the result of mental disease or defect a defendant lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of the law. *United States v. Brawner*, 153 U.S.App.D.C. 1, 11, 471 F.2d 969, 979 (1972) (en banc).[4] "[A] mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substan-

3. *Cf. McDonald v. United States*, 114 U.S. App.D.C. 120, 124, 312 F.2d 847, 851 (1962) (en banc).

4. The question of the proper standard for the defense of insanity is currently at issue in other cases now pending in this court. *United States v. Brawner, supra*, was decided after the effective date of the District of Columbia Court Reorganization and Criminal Procedure Act of 1970, Pub.L. No. 91–358 (July 29,

1970), and thus is not binding on the District of Columbia courts. While in *Brawner* the Circuit Court of Appeals basically adopted for its court system the American Law Institute standard as a replacement for the test previously existing under *Durham v. United States*, 94 U.S.App.D.C. 228, 214 F.2d 862 (1954), this court has not yet resolved that issue. *See M. A. P. v. Ryan*, D.C.App., 285 A.2d 310 (1971); *Hughes v. United States*, D.C. App., 308 A.2d 238, 241–42 and n. 12 (1973).

tially impairs behavior controls. . . ." *McDonald v. United States*, 114 U.S. App.D.C. 120, 124, 312 F.2d 847, 851 (1962) (en banc), a definition adopted in *United States v. Brawner, supra,* 153 U.S. App.D.C. at 15, 471 F.2d at 983. The term "disease" is used "in the sense of a condition which is considered capable of either improving or deteriorating", while the term "defect" is used "in the sense of a condition which is not considered capable of either improving or deteriorating and which may be either congenital, or the result of injury, or the residual effect of a physical or mental disease." *Durham v. United States,* 94 U.S.App.D.C. 228, 241, 214 F.2d 862, 875 (1954), *overruled on other grounds, United States v. Brawner, supra,* 153 U.S.App.D.C. at 13, 471 F.2d at 981. Mental retardation is a mental defect[5] capable of affecting both mental processes and behavior controls to the extent that a defendant in a given situation might not be able to appreciate the wrongfulness of his conduct or might not be able to conform his conduct to the requirements of the law.[6] Retardation is thus a basis for a defense of insanity, and was so regarded by the parties to this case.

■ Appellee, acquitted by reason of mental retardation, came within D.C.Code 1973, § 24–301(d)(1), which provides for commitment of the insanity-acquitted to a "hospital for the mentally ill" until eligible for release. Commitment under the statute is mandatory. *United States v. Brawner, supra* at 28, 29, 471 F.2d at 996, 997.

■■ The purpose of the commitment under § 24–301, however, is a mental examination. *Id.* "The objective of [the] prehearing commitment . . . is observation and examination to ascertain current mental condition, and the commitment is temporary and of limited duration. . . ."[7] *Ashe v. Robinson,* 146 U.S.App.D.C. 220, 222–23, 450 F.2d 681, 683–84 (1971) (footnote omitted). Furthermore, the statute provides that a judicial hearing is required within fifty days to determine whether the person confined is eligible for release. D.C.Code 1973, § 24–301(d)(2).[8] The court must rule within ten days from the beginning of the hearing and may order conditional or unconditional release if the evidence warrants.[9] The evaluation and judicial review embodied in § 24–301 would result in the formulation of an appropriate program of treatment for appellee.

■ The purpose of § 24–301(d) is twofold, however, both to provide the defendant with treatment and to protect the public. H.R.Rep.No.907, 91st Cong., 2d Sess. 74 (1970). Perhaps the former purpose has been accomplished to some extent by an evaluation conducted under the auspices of the trial court and the undertaking of a suitable course of treatment, but the results were inconclusive. Moreover, the public

---

5. I.Q. is probative as to the existence of a mental defect, along with other evidence. *McDonald v. United States, supra,* 114 U.S.App. D.C. at 123, 312 F.2d at 850.

6. *Cf. United States v. Brawner, supra* at 23, 471 F.2d at 991.

7. Dr. Henry William Dobbs, Director for the Division of Forensic Psychiatry Programs at St. Elizabeths Hospital, testified that the hospital had facilities for such evaluations and that it also had an out-patient program of treatment.

8. The person confined has the burden of proving that he is not mentally ill and not likely to injure himself or others due to mental ill-

ness. *United States v. Brawner, supra* at 30, 471 F.2d at 998; D.C.Code 1973, § 21–545 (b).

9. There are three other avenues for review and release contained in the statute—a motion for release, § 24–301(k)(1); application for habeas corpus, § 24–301(k)(7); and certification by the superintendent that the person is entitled to release under § 24–301(e), which has been interpreted as entitling the person confined to periodic examination by the hospital staff, examination by an outside psychiatrist, and a court hearing if any one of the examining physicians believes he should no longer be hospitalized, *United States v. Brawner, supra* at 29, 471 F.2d at 997.

 

interest has not been fulfilled. No protective safeguards or conditions whatsoever were considered or attached to appellee's release into the community. We therefore remand the case to the trial court with directions that appellant be committed under § 24–301 for evaluation and determination of the proper course of treatment.

*Reversed and remanded.*