Bobbie A. BRANCH a/k/a Andrew B. Branch, Appellant,

v.

UNITED STATES, Appellee.

No. 10513.

District of Columbia Court of Appeals.

Argued Jan. 17, 1977.

Decided April 19, 1977.

---

2. *E. g., United States v. Kelly,* 449 F.2d 329, 330 (9th Cir. 1971); *cf. United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).

Winthrop N. Brown, Washington, D.C., appointed by the court, for appellant.

C. Madison Brewer, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, Albert H. Turkus, and Robert E. Hauberg, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

KELLY, Associate Judge:

Appellant Branch seeks reversal of his conviction of second-degree burglary on the ground that a sixteen-month delay between arrest and trial violated his constitutional right to a speedy trial. We conclude that this claim of error has merit, and we reverse.

Appellant and one Samuel Bynum were arrested on a warrant on August 2, 1974, and were indicted for second-degree burglary and grand larceny on December 20.[1] Thereafter, a series of continuances and status hearings delayed the scheduled trial until April 16, 1975.[2] On that day the government announced it was unprepared for trial and requested still another continuance. Instead, the court granted appellant's motion to dismiss for want of prosecution. The dismissal was to be without prejudice. A second identical indictment of appellant was filed on September 24, 1975, and on December 5, he was convicted of second-degree burglary.

*Barker v. Wingo*, 407 U.S. 514, 529, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), places

---

1. D.C. Code 1973, §§ 22–1801(b) and –2201, respectively. The facts, in the words of the government, were:

 On the evening of July 27, 1974, police were summoned to the apartment complex at 3339 10th Place, S.E., after the resident manager discovered two men moving furniture out of the apartment where Lanxter Keys resided. The police ascertained that the men were appellant and Samuel Bynum. Mr. Keys could not be located. The men were directed to return the furniture to the apartment. The officers then let the men go about their business.

It was later ascertained that the body of Lanxter Keys had been found in a park in Brooklyn, New York, on July 16. Arrest warrants were then obtained. Appellant and Bynum were apprehended on August 2, 1974, and charged with burglary in the Superior Court for the District of Columbia. [Govt. Br. at 2.]

2. Bynum's case was severed from that of appellant on March 11, 1975. Bynum was ultimately tried for murder in the federal court.

the burden of assuring that criminal cases be promptly tried on the courts and on the government. A four-pronged balancing test is established for determining whether an accused has been denied a speedy trial, *viz:* (1) the length of the delay, (2) the reasons for the delay, (3) the assertion of the right by the defense, and (4) the prejudice to the accused. We consider these factors, seriatim, as they relate to this case.

## LENGTH OF DELAY

 A delay of a year or more between arrest and trial gives prima facie merit to a claim that an accused has been denied the right to a speedy trial. *United States v. Mack,* D.C.App., 298 A.2d 509, 511 (1972); *United States v. Holt,* 145 U.S.App.D.C. 185, 448 F.2d 1108, *cert. denied* 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971); *Hedgepeth v. United States,* 124 U.S.App. D.C. 291, 364 F.2d 684 (1966).[3] A heavy burden then shifts to the government to justify the delay. *Smith v. United States,* 135 U.S.App.D.C. 284, 418 F.2d 1120, *cert. denied,* 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969). Prejudice to the defendant need not be affirmatively shown after such lengthy delay, *United States v. Bishton,* 150 U.S.App.D.C. 51, 463 F.2d 887 (1972),[4] and the longer the delay and the less serious the offense, the heavier the government's burden will be. *United States v. Holt, supra.*[5] The remedy for the

denial of the right to a speedy trial is dismissal of the indictment. *Barker v. Wingo, supra* 407 U.S. at 522, 92 S.Ct. 2182; *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

 The government's claim that the four and one-half months between dismissal of the first indictment and the filing of the second should be disregarded in computing the length of the delay here is baseless; hence, the government must satisfactorily explain the sixteen-month delay between appellant's arrest and his trial.

## REASON FOR THE DELAY

The government, citing *United States v. Bishton, supra,* argues that the period from April 16 to September 24, 1975 should not be counted in measuring the trial delay because appellant was not an "accused" during that time.[6] However, while neither opinion is binding on this court,[7] we deem the situation here more analogous to that in *United States v. Lara,* 172 U.S.App.D.C. 60, 520 F.2d 460 (1975). In an attempt to justify the delay the government explains that in addition to the instant charges it desired to indict appellant for the murder of Lanxter Keys and had investigated the possibility of so indicting appellant until December 20, 1974, when the grand jury returned the present indictment for burglary and grand larceny. Thereafter, apparently reluctant to try the case, the government announced

3. It has been said that a delay of over six months warrants inquiry and justification. *United States v. Ransom,* 151 U.S.App.D.C. 87, 465 F.2d 672 (1972). A seven and one-half month delay has been held by this court to be a denial of the right to a speedy trial. *United States v. Young,* D.C.App., 237 A.2d 542 (1968).

4. "*Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial . . . ." [*Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973).]

5. The Court in *Barker* said that "the delay that can be tolerated for an ordinary street crime is *considerably less* than for a serious, complex conspiracy charge." *Barker v. Wingo, supra* at 531, 92 S.Ct. 2192. This factor was taken into account in *United States v. West,* 164 U.S.App.

D.C. 184, 504 F.2d 253 (1974), where it was held that dismissal of the indictment is required when the defendant was in custody for 13 months, the crime was not violent, the issues of law and fact were not complicated and court congestion was the cause of the delay.

6. The defendants in *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), attempted to include a three year preindictment, prearrest period during which the government allegedly knew of their offenses in computing length of delay. The Court declined to include this time in evaluating a speedy trial claim, but that factual situation is distinguishable.

7. *See M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971).

on April 16, 1975 that despite a series of prior continuances it was not yet ready for trial.[8] Instead, the court dismissed the charges for want of prosecution without prejudice.

On May 5, 1975, Bynum was convicted in the federal court of felony murder and various kidnapping offenses. The government had hoped until the trial that Bynum would cooperate in helping to indict appellant for murder,[9] but Bynum steadfastly refused to do so. It eventually abandoned its efforts and appellant was reindicted for burglary and grand larceny on September 24, 1975.

In a transparent effort to elicit sympathy for its argument on appeal, the government includes in its brief a lengthy description of the grisly details of the Keys murder as they were brought out in Bynum's trial. We concur in appellant's protestation that these distasteful facts are irrelevant to the issue of whether the government has justified its delay in bringing appellant to trial in Superior Court for burglary. It is clear to us that however sincere the government's desire to try appellant for the murder of Lanxter Keys, the fact is that the delay of appellant's trial for burglary was deliberate and unjustified. It was caused by the government for the government's own benefit. Neither appellant nor the judicial system are chargeable with any of the sixteen months which elapsed. The government refused to go to trial on April 16, 1975, in the lingering hope that Bynum would implicate appellant in the Keys murder. When he did not, and was himself convicted on May 5, the government waited yet another four months, one month after Bynum was sentenced, to reindict appellant. *See United States v. Young*, D.C.App., 237 A.2d 542 (1968).

In *United States v. Lara, supra,* the government dismissed an indictment in the District of Columbia and nine months later filed an identical indictment in Florida.

Nineteen months elapsed between the filing of the first indictment and the trial. To justify its dismissal of the District of Columbia indictment, the government said that one of its witnesses had been shot and another had proved unreliable. The court found these reasons inadequate, however, stating that the government simply wanted to try the case in the more advantageous judicial climate of Florida.

It held that the ensuing delay was for the tactical advantage of the government and was chargeable to the government despite the fact that for nine of the nineteen months the defendants were not under indictment and for the other ten they were free on bail. It held, also, that prejudice was created by the lapse of time per se. *United States v. Lara, supra,* 172 U.S.App. D.C. at 65, 520 F.2d at 465.

*United States v. Bishton, supra,* can be distinguished from this case and from *Lara,* for in *Bishton* the government was charged with less than a year of the twenty month delay between indictment and trial. While the court thought it significant that for three months of this period the defendant was not an "accused", i. e., was not under arrest or indictment, it recognized that the holding in *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), concerning a period *before* arrest or indictment has less force when applied to the time span between dismissal without prejudice of one indictment and the filing of a second identical one. *United States v. Bishton, supra,* 150 U.S.App.D.C. at 55, 463 F.2d at 891. It also acknowledged dicta in *Marion* to the effect that a delay in either filing an indictment against or effecting the arrest of an accused may be prejudicial. *Id.*

■ We conclude, therefore, following the analysis of *Lara,* that the time between indictments, the dismissal of appellant's first and the filing of the second, is a delay properly chargeable to the government.

---

8. Counsel speculated at oral argument that the government may have been reluctant to try appellant for burglary fearing that if he were acquitted it may not have been able to use the same evidence in a later homicide trial.

9. Even during Bynum's trial the government offered him a plea to second-degree murder in exchange for his testimony against appellant.

### ASSERTION OF THE RIGHT

 The government argues that whatever the merits of appellant's claim, he cannot be heard to complain since he made no formal motion to dismiss until two days before trial. When a defendant is incarcerated, however, the government must assume he wants a speedy trial unless he asserts otherwise. *United States v. Calloway,* 164 U.S.App.D.C. 204, 210, 505 F.2d 311, 317 (1974). In addition, a motion for release is to be construed as the functional equivalent of a motion for speedy trial. *Id.* Here appellant was incarcerated for nine of the sixteen months between arrest and trial because he was unable to raise bond, although he had moved for and had been granted a reduction in bond. Furthermore, he moved to dismiss for lack of prosecution on April 16, 1975, and the motion was granted. Under these circumstances, it cannot seriously be contended that appellant failed adequately to assert his right to a speedy trial.

### PREJUDICE TO THE DEFENDANT

In *Barker v. Wingo, supra,* the Court explains the interests of an accused which are prejudiced by the lack of a speedy trial. Two—the protection from oppressive incarceration and a minimum of anxiety and concern—are personal. Appellant suffered prejudice on both accounts here.

 Appellant was jailed from August 1974 to April 1975, eight months of what the Supreme Court has called "dead" time, *i. e.,* time in which a defendant neither sees nor supports his family, time during which he would likely lose his job, and time which is not spent constructively in any way. *See Barker v. Wingo, supra,* 407 U.S. at 532–33, 92 S.Ct. 2182. Incarceration was thus detrimental both to appellant as an individual and to his ability to prepare his defense. Furthermore, the delay occasioned by the government's failure to try the case in April 1975, heightened appellant's concern and anxiety, for even though he was free for five months, the possibility of reindictment remained. His situation was not unlike being free on bond, *i. e.,* not without

limitations being placed upon his liberty. *See Klopfer v. North Carolina,* 386 U.S. 213, 221–22, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

 A third interest which may be prejudiced is impairment of a defense. In this case defense counsel said at trial on December 4, 1975, that he had intended to call two witnesses who would testify that appellant was in a bar on the day of the burglary when Bynum approached him and asked him to help move some furniture. One of these witnesses could not be located at the time of trial and the other could not recall such a conversation. Whether such a conversation ever took place may be pure speculation as the government says; yet, the disappearance of witnesses or their loss of memory during the delay of trial is obviously prejudicial. *Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. 2182, 2193. And loss of memory "is not always reflected in the record because what has been forgotten can rarely be shown." *Id.* Thus, it is impossible on the record to say that the passage of time did not impair appellant's defense.

### CONCLUSION

We have weighed the factors and surrounding circumstances of the case, including the nature of the offense of which appellant was accused, and conclude that the government clearly failed to refute appellant's prima facie claim of denial of speedy trial raised by the lapse of more than a year between arrest and trial. Accordingly, the judgment of conviction of second-degree burglary is reversed, and the case is remanded with instructions that the indictment be dismissed.

*So ordered.*